## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**ABRAHAM BAILEY,**
         **Plaintiff,**

**v.**                                                     **Case No: 5:09cv368/RS/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
         **Defendant.**
_____

## REPORT AND RECOMMENDATION

         This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Bailey's application for Supplemental Security Income benefits under Title XVI of the Act.

         Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

# PROCEDURAL HISTORY

Mr. Bailey filed an application for benefits claiming an onset of disability as of July 18, 2001.  The application was denied initially and on reconsideration, and Mr. Bailey requested a hearing before an administrative law judge (ALJ).[1]  A hearing was held on December 19, 2008 at which Mr. Bailey was represented by counsel and testified.   A vocational expert also testified.   The ALJ entered an unfavorable decision (tr. 14-23) and Mr. Bailey requested review by the Appeals Council without submitting additional evidence.  The Appeals Council declined review (tr. 5-7).  The Commissioner has therefore made a final decision, and the matter is subject to review in this court.  *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).

# FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Mr. Bailey had not engaged in substantial gainful activity since September 17, 2003; that he had severe impairments of (1) obstructive sleep apnea, (2) history of narcolepsy, (3) obesity, (4) right lower extremity edema, (5) cognitive disorder, and (6) major depressive episode, but that he did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix One; that he had the residual functional capacity to perform light work limited to routine, repetitive work tasks; that he was capable of performing his past relevant work as a security guard; and that he was not under a disability as defined in the Act.

---

[1] Initially the ALJ ruled that the request for hearing was untimely and dismissed the application. Mr. Bailey appealed.  The Appeals Council reversed and remanded for a hearing (tr. 271).

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits.  *See Moore,* 405 F.3d at 1211;  20 C.F.R. § 416.920 (2009) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2009) (five-step determination for DIB).  A finding of disability or no disability at any step renders further evaluation unnecessary.  See 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520.  The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe physical or mental impairment that meets the duration requirement?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 to subpart P of 20 C.F.R. Part 404 and meet the duration requirement?

4. Considering the individual's residual functional capacity, can the individual perform past relevant work?

5. Can the individual perform other work given the individual's residual functional capacity, age, education and work experience?

(*Id.*)

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore,* 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th

Cir.1985)). **If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.** *Doughty v. Apfel*, **245 F.3d 1274, 1278 (11th Cir. 2001);** *Allen v. Bowen,* **816 F.2d 600, 601 (11th Cir. 1987). If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner.** *Doughty,* **245 F.3d at 1278 n.2;** *Hale v. Bowen*, **831 F.2d 1007, 1011 (11th Cir. 1987).**

## PLAINTIFF'S MEDICAL HISTORY

**The bulk of the medical record in the administrative file comes from the Community Clinic where Mr. Bailey frequently sought treatment, and covers the period from July 26, 2001 to June 2, 2005. There were multiple visits, primarily dealing with complaints of morbid obesity, sleep apnea and narcolepsy. At the beginning of this period, Mr. Bailey went to the clinic generally on a monthly basis, but he went there only three times in 2004 and only once in 2005. His treatment was conservative throughout. Relative to one of the issues raised in this case, he was referred to sleep studies in August 2001 and February 2003. According to a note in the progress section of the clinic records, the Bay Medical Sleep Disorder Clinic called and recommended follow up for profoundly severe obstructive sleep apnea (tr. 142). The report from the second sleep clinic test also showed profoundly severe obstructive sleep apnea and hypopnea syndrome with hypoxemia, as well as profoundly severe upper airway disturbance syndrome (excessive snoring) (tr. 166).**

**On August 18, 2003, Vincent Ivers, M.D., an internist, wrote a letter addressed To Whom It May Concern indicating that Mr. Bailey was a patient who was last seen on August 15, 2003, and that in his professional opinion, Mr. Bailey should not work until further notice (tr. 176). The transcript does not contain records of any visits to Dr. Ivers for treatment. However, on October 19, 2004, Dr. Ivers performed a disability evaluation noting that Mr. Bailey was 34 years old and had significant**

difficulty staying up during the daytime. He had been treated by the Health Department for narcolepsy/sleep apnea for some time. Mr. Bailey had told Dr. Ivers that he had difficulty keeping any type of jobs recently. His primary complaint was excessive daytime sleepiness secondary to his inability to sleep at night. On examination he was noted to be significantly obese. Oxygen saturation tests were 88 upon presentation and in the low 80's when he was snoring. There were significant skin changes on both legs consistent with chronic lymphedema but no signs of calf tenderness or vericosities. Range of motion was within normal limits as were all reflex tests and motor strength. His gait was slow and deliberate, largely due to his 339 pound weight. Dr. Ivers opined that Mr. Bailey needed to be treated aggressively, particularly by losing weight and stopping smoking. He needed to use his C-pap machine and seek evaluation by an ENT specialist. Finally, Dr. Ivers opined that Mr. Bailey was unlikely to maintain any gainful employment because of his hypersomnolence (tr. 158-162).

The only other treatment records during the 2001 to 2005 time period show that Mr. Bailey went to the emergency room with a cough on March 15, 2005 (tr. 209) and that he returned to the emergency room on May 30, 2005 complaining of a swollen leg (tr. 204). He was treated conservatively and released each time.

More than two years later, on August 20, 2007, Mr. Bailey was hospitalized for swelling in his legs, sleep apnea and cellulitis. He was again treated conservatively and given antibiotics for an infection in his leg (tr. 358-371). While hospitalized an echocardiogram disclosed only mild left atrial enlargement (tr. 357). Mr. Bailey returned to the emergency room on September 1, 2007, again with leg swelling problems. The records note that he was not taking his medications (tr. 372-380).

Mr. Bailey was examined by several consulting physicians. He saw Damon LaBarbera, Ph.D., a psychologist on September 16, 2004. Dr. LaBarbera noted that Mr. Bailey snored loudly in the waiting room and had to be awakened for his appointment. He was wheezy and breathing heavily and he was morbidly obese. Mr.

Bailey seemed indignant that he had to have a psychological evaluation because there was nothing wrong with his brain although he had memory problems. He repeatedly fell asleep during the interview, snoring loudly. He also fell asleep repeatedly while taking a memory test. Dr. LaBarbera noted that Mr. Bailey undoubtedly had memory problems because his level of arousal was so low. He needed better control of his sleep disorder before any usable psychological data could be obtained. Mr. Bailey reported that his C-pap machine was not working and Dr. LaBarbera was of the impression that Mr. Bailey lacked motivation to improve (tr. 176-178).

On July 7, 2005, Mr. Bailey was examined by Mary Tyll, Ph.D., for memory testing only. Dr. Tyll was unable to get accurate scores because Mr. Bailey continued to fall asleep during the examination. However, Dr. Tyll observed that when Mr. Bailey was performing a sub-test which required him to mimic physical tasks performed by the examiner, he remained noticeably awake. She noted that this was "rather surprising" but made no further comment as to its significance (tr. 217-218).

Dr. Ivers performed a second disability evaluation on April 10, 2008. Mr. Bailey had lost nearly 100 pounds, weighing 218. He was ambulating and was more comfortable than he had been before. He still complained of having some difficulty getting around due to his sleep apnea, and he felt tired a lot. He said he was still using his C-pap machine. Overall, he appeared to be doing better than he was just a few years prior. On physical examination Mr. Bailey indicated that he felt weak throughout and Dr. Ivers noted generalized muscle aches and pains with some swelling around the ankles. Physical examination was otherwise unremarkable. Reflexes and strength were normal throughout. Dr. Ivers' impression was sleep apnea, history of narcolepsy, swelling of bilateral extremities, and history of a gunshot wound to his right upper quadrant. Dr. Ivers noted that as far as generalized fatigue, there had been improvement since his first evaluation. Sleep

apnea would probably be an ongoing issue and would probably be better evaluated by his primary physician. Concerning other issues such as fatigue and generalized aches and pains, Dr. Ivers did not see specific evidence of any major abnormality (tr. 397-400).

Mr. Bailey's third psychological evaluation was performed by George Horvat, Ph.D., on May 30, 2008. Mr. Bailey reported that he was five foot eight inches tall and weighed 300 pounds.[2] He was appropriately dressed and groomed. He walked with a shuffle and had some tremors. His voice quality was within normal limits, and Dr. Horvat noted that he appeared to be reliable as a reporter. His chief complaint was memory loss. He was drowsy and went to sleep while filling out a form, and his attention was distractable and his concentration was preoccupied. Mr. Bailey's memory was limited as he missed two of three items after five minutes. He was cooperative but his mood was depressed. His intelligence level and his fund of knowledge appeared to be average. He said that his sleep apnea was his greatest problem because he fell asleep anywhere. His memory test scores indicated that he was not likely to be malingering. Dr. Horvat assigned a GAF of 50 and opined that if Mr. Bailey could be cleared physically, he would be capable of routine, repetitive, labor-intensive types of work under direct supervision (tr. 401-404).

Mr. Bailey was examined by Kris Lewandowski, M.D., an internist, on April 13, 2009. His chief complaint was narcolepsy. He weighed 315 pounds, more than he had weighed in the Spring of 2008. His physical examination was entirely normal except for some swelling above his right ankle, consistent with lymphedema. Dr. Lewandowski noted that Mr. Bailey's hands were calloused "indicating significant amount of manual labor recently" despite Mr. Bailey's report that he was unable to work for a few years. (Tr. 435). Dr. Lewandowski's notes suggest that Mr. Bailey perhaps was not a reliable historian as he observed that Mr. Bailey seemed to coming with different complaints at different evaluations and also that despite Mr.

---

[2]If correct, he had gained over 80 pounds in the preceding seven weeks.

Bailey's claim that he was not driving, he drove off alone in his car from the doctor's office. At this examination there were no major abnormalities except for significant obesity, and Dr. Lewandowski could find no objective evaluation of narcolepsy in the medical records (tr. 434-436).

## DISCUSSION

Mr. Bailey argues that the ALJ erred in failing to give appropriate weight to the opinion of his treating physician, and in failing to properly consider the appropriate pain standard, and that he was disabled as a matter of law as of his onset date. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that Mr. Bailey was not disabled, in light of his physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1.  Treating physician opinion.

Mr. Bailey first contends that the ALJ did not give the appropriate weight to Dr. Ivers' opinion. Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the

record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. *See* 20 C. F. R. § 404.1527(d)(1);  *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005).   However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability.  *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241.   Failure to do so is reversible error.  *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[3] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

---

[3]*MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

Mr. Bailey argues that the ALJ improperly used Dr. Ivers' April 10, 2008 examination note as the basis for finding him not disabled.  It was improper, he says, because Dr. Ivers did not retract his 2003 statement that Mr. Bailey "should not work until further notice from my office" and his opinion therefore must not have not changed (tr. 176).  This argument fails for two reasons.

First, a treating physician's opinion that a patient is "unable to work" or is "disabled" is not dispositive for purposes of Social Security claims.   The Commissioner's regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner.  For instance, Title 20 C.F.R. § 404.1527(e)(1) specifically states that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion.  *See also* Title 20 C.F.R. § 416.927(e). Furthermore, the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner.  Title 20 C.F.R. § 404.1527(e)(3) and § 416.927(e)(3);  *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance").  Although such opinions on disability are not entitled to controlling weight, they must not be ignored, and the Commissioner must examine the entire record to determine whether such opinions are supported by the record. SSR 96-5p.  In *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) the court reversed the ALJ's finding of no disability, in part because the ALJ relied on a treating physician's report that the claimant could no longer work as a longshoreman when this report was ambiguous as to whether the claimant could do *any* work, and the physician subsequently wrote a letter saying the claimant was completely disabled.

To require the Commissioner to accept as controlling a statement that a patient is or is not disabled would require the Commissioner to credit the physician not only with knowledge of the patient's physical condition, but also with an understanding of the nuances of how the regulations analyze physical limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters. Moreover, a physician's opinion on whether a person is able to work may be colored by such things as the physician's knowledge of local hiring practices, whether there are specific job vacancies, a person's reluctance to do a particular kind of work, and similar matters. These things are not properly considered by the Commissioner in determining disability. Title 20 C.F.R. §§ 404.1566, 416.966. For all these reasons, a physician's opinion that his or her patient cannot work or is disabled is not a conclusive medical opinion for the purpose of Social Security benefits determinations and by itself is not entitled to special significance. Therefore, Dr. Ivers' statement that Mr. Bailey could not work, regardless of when this statement was made or whether it was retracted, is not controlling.

The second reason this argument fails is that Mr. Bailey's overall condition at the second examination was significantly better than earlier. The ALJ noted that there had been improvement, that Dr. Ivers no longer suggested that Mr. Bailey should not work, that Dr. Ivers' earlier opinion was based largely on Mr. Bailey's subjective reports, and that there had been long periods when Mr. Bailey did not seek medical care. Each of these findings was supported by substantial record evidence. There clearly had been improvement and Dr. Ivers had relied largely on Mr. Bailey's subjective complaints in forming his earlier opinion. Mr. Bailey overlooks the notes saying he was ambulating and appeared to be more comfortable, that overall he appeared to be doing better, and that he had lost a significant amount of weight which may have helped. Dr. Ivers' conclusion at the second examination was that generalized fatigue appeared to have improved, that

sleep apnea was ongoing and would probably need more treatment if it continued, that his pedal edema was dramatically improved, and that as to fatigue and generalized aches and pains, and most significantly, he "did not see any specific evidence of any major abnormalities." (Tr. 399-400).

Mr. Bailey also contests the ALJ's finding of long periods without medical care, but the record supports that finding. There is no medical record at all from May 2005 until August 2007, more than two years later. Finally, it is true that Dr. Ivers did not retract his earlier opinion, but he did not reaffirm it either. And, the findings set forth above strongly suggest that there was no factual support for him to reaffirm his earlier conclusion after the second evaluation.

2.   <u>Subjective complaints of pain.</u>

Mr. Bailey's second ground for relief is that the ALJ did not apply the appropriate pain standard. As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[4] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

---

[4]*Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Adamo v. Commissioner of Social Sec.,* 365 Fed. Appx. 209, 2010 WL 476691, *3+ (11th Cir. 2010) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd*., 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054. Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*,

395 F.3d 1206, 1210 (11th Cir. 2005).  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.  *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted).  And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence.  *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain."  *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[5]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  *Hand, supra,* at 1548-49.  It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence."  *Arnold v. Heckler*, 732 F.2d 881, 884  (11th Cir. 1984).   Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the

---

[5]  Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Here the ALJ found that Mr. Bailey met the first prong of the pain standard when he found that obesity, obstructive sleep apnea, history of narcolepsy, and right lower extremity edema were severe, thus providing evidence of the "underlying medical conditions." However, the ALJ noted significant gaps in care, failure to keep appointments, overall improvement (according to Dr. Ivers), an essentially benign examination report by Dr. Lewandowski, and failure to seek regular care. Mr. Bailey contends that this last was because of lack of finances or insurance, but he has presented no evidence to that effect, nor has he explained why he stopped going to the local Clinic in 2005. Also, Mr. Bailey lost weight, was getting better, but then gained it back. Finally, there was a noted inconsistency in Mr. Bailey's efforts on testing according to Dr. Tyll. The ALJ's finding that Mr. Bailey's complaints were less than credible was supported by substantial record evidence, and all of the foregoing findings support he conclusion that he did not meet the second portion of the pain standard. Therefore, he is not entitled to reversal on this ground.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 9th day of December, 2010.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).**